## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO. 5:18CR00698-001** |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **JUDGE SARA LIOI** |
| | ) | |
| | ) | |
| | ) | **DEFENDANT'S** |
| **JOSHUA CARSON** | ) | **SENTENCING MEMORANDUM** |
| **Defendant.** | ) | |

Now comes the Defendant, by and through counsel, and hereby submits the following sentencing memorandum in the instant matter. A sentencing date of June 5, 2019 at 9:00 a.m. is scheduled.

                                              Respectfully Submitted,

                                              /s/ Erik E. Jones
                                              ERIK E. JONES, ESQ. (#0075418)
                                              137 South Main Street, Suite 102
                                              The Delaware Building
                                              Phone  (234) 208-5020
                                              Facsimile (234) 205-2687
                                              erik@erikejoneslaw.com
                                              *Attorney for Defendant Joshua Carson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of May, 2019 a copy of the foregoing filed electronically, Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

                  Respectfully Submitted,

                  /s/ Erik E. Jones
                  ERIK E. JONES, ESQ. (#0075418)
                  137 South Main Street, Suite 102
                  The Delaware Building
                  Phone  (234) 208-5020
                  Facsimile (234) 205-2687
                  erik@erikejoneslaw.com
                  *Attorney for Defendant Joshua Carson*

**MEMORANDUM**

A.    **Introduction**

Joshua was named (along with co-defendant Joseph Graziani) in a one count indictment charging him the crime of Possession of an Unregistered Firearm in violation of 26 U.S.C. 5861(d) and 26 U.S.C. 5871.  He was arrested on October 1, 2018 and subsequently arraigned where he entered a plea of not guilty.  Discovery was exchanged, pretrial hearings were conducted and on February 14, 2019, Joshua entered a plea of guilty to the indictment as charged.  This charge is a Class C felony with a maximum potential penalty of 10 years imprisonment and a $250,000.00 fine.

B.    **Defendant History**

    **I. Personal**

Joshua was born March 1, 1991 to Christina Carson.  He has no siblings.  Joshua has never met his biological father and has no information on his location of residence or contact information.  He grew up in Minerva, Ohio.  Joshua's child hood was strained with a one parent, one income household barely passing for lower middle class.  Joshua still has a very close relationship with his mother.

Joshua's child hood was marked by traumatic experiences.  At the age of 11, he witnessed a shooting in the City of Canton, Ohio.  He suffered from a weight issue and was taunted and bullied by other children.  Often he would refuse to go to school or feign illness to avoid the jeers and insults.  However, such absences would accumulate and Josh then found himself in the Stark County Juvenile Court answering to delinquency by way of truancy charges.  Unfortunately, Joshua had a few stays in the Stark County Juvenile Justice Center and soon began making friends with older kids from other parts of Stark County such as Canton.  Upon his release, he then found himself straying from his

hometown of Minerva and hanging with older juveniles in the city of Canton. These new friendships and new surroundings set Joshua down a path that would ultimately lead him to before this Court.

## II. Medical and Mental Health

Joshua has previously participated in mental health counseling. Joshua states that approximately three years ago he was diagnosed with manic depression and participated in counseling through Coleman Professional Services in Stark County. It should be noted that Joshua on his own accord initiated this counseling and it was not mandatory as part of any sentence from a Court. Unfortunately, Joshua did not complete the counseling program. Joshua would benefit from a mental health evaluation and is committed to any recommendations that would issue.

Joshua is also in good physical health and presents no impairments.

## III. Education and Employment History

Josh has attended two different high schools, but did not graduate from either. However, he did obtain his G.E.D. in 2012. Josh has some post graduate education, but nothing of any significance towards obtaining a degree.

He has previously been employed as a carpenter. Joshua has had the same employer since 2015, Erie Construction Co. He has not held any other employment.

## IV. Substance Abuse History

Joshua has a lengthy history of illegal drug use and abuse. He began drinking alcohol and smoking marijuana at the age of 10. Since the age of 10, as long as he can remember (outside terms of incarceration) drinking every weekend all weekend and smoking marijuana on a daily basis. Additionally, when Joshua drinks alcohol, he abuses alcohol. He consumes until he is intoxicated. Josh's alcohol usage is not casual or recreational, but habitual and destructive. Joshua has also

4

abused prescription pain medication, heroin, cocaine, and acid. Josh started using powder cocaine at the age of 15. He has been a daily heroin user for the last 12 years. Drug addiction has had a strangle hold on Josh for the majority of his life. Following, he would welcome the opportunity to participate in the Residential Drug Abuse Program (RDAP) as offered by the Federal Bureau of Prisons.

### V. Custodial/Incarceration History

Joshua has been incarcerated through State Court sentences. He was incarcerated for two years in the Belmont Correctional Institute in St. Clairsville, Ohio. While incarcerated, he was involved in the prison gang the Satan Disciples, but received no discipline for any gang related activities and received no discipline for fight, crimes of violence or disrespect directed towards staff.

### C. Sentencing Computation

#### I. Criminal History

Joshua has a criminal history score of 12, however, he did commit the instant offense while under a criminal justice sentence, therefore his adjusted criminal history score is 14, which establishes a Criminal History Category VI.

#### II. Offense Level

Joshua and the Government entered into a plea agreement concurring that his base offense level was 20. Additionally, Joshua has accepted responsibility therefore earning him a 3 level reduction yielding an adjusted offense level of 17. A statement of Acceptance of Responsibility is attached to this sentencing memo.

#### III. Sentencing Guideline Range Computation

Under the terms of the plea agreement, an adjusted offense level of 17 within Criminal History Category VI yields a sentencing range of 51 to 63 months.

5

## IV. Relevant Conduct

On the day in question, Joshua was staying at his girlfriend Amber Rodd's house on 14th Street NW in Canton, Ohio. Joe, his co-defendant, came over to the house approximately 11:00 a.m. Joe and Josh had met approximately three years earlier while incarcerated in the Stark County Jail. When they got out, they discovered that they knew some of the same people and had associates in common. Joe briefly stayed and then left when he could not talk Josh into going with him to possibly obtain, possess and spirit away personal property that belonged to another. Josh, Amber and her friend Jess where more interested in getting high. Jess then drove Josh across town to buy some "dope". They traveled to the south east part of the city. They wanted to purchase methamphetamine and heroin, but were only able to secure methamphetamine. Jess went in the house to purchase the meth and came out with the product. Joshua shot up in the car before they even left the driveway of the drug house. Jess and Josh split up the rest of the meth and she dropped him off at a restaurant, Mr. G's Chicken. Joe telephones Josh and then comes and picks him up from Mr. G's. They were headed back to Amber's to use the rest of the drugs that Josh had purchased. While in the car, Joe tells Joshua that he had some guns in the car. Joe shows Josh the shotgun with the short barrel and says "Where can I get rid of this?" (where can I sell this?). Joe says that he doesn't want this sitting out, so he puts it in a reed draw string bag and then ask Josh if he can out it in Josh's bag. At this point in time, Josh has been up for three days straight, just intravenously injected meth and is starting to need to do the rest. So, Joshua does not object and just wants to get back to Amber's house so he can do the rest of the drugs he bought. Josh then puts the gun in his bag and outs the bag on the floor-board of the front seat passenger's seat where he was sitting. As they were making their way back to

6

Amber's they come into contact with law enforcement.  Law enforcement begins to follow them.  Joe says to Josh "what are we going to do about the guns?", while Josh responds "what are we going to do about my dope?"  They pull into a gas station and Josh gets out of the truck, but as he does so, he grabs his bag of dope from the center consol.  In his haste, he also grabs another bag that had some .22 caliber bullets in it.  Law enforcement detains them as the pull into a gas station.  Joshua complies with all lawful demands and informs law enforcement about the firearm upon questioning immediately.  He is found to have on his person a bag of methamphetamine and the .22 bullets.  It should be noted that Josh did not have a firearm on him and that there were no .22 caliber firearms in the motor vehicle.  While he possessed these bags contemporaneously, his possession was in a manner which is contemplated by United States Sentencing Guidelines subsection 2K2.1(b)(6)(A) or (B).

**D.**     **The Goals of Sentencing - 18 U.S.C. §3553(a)**

After **Booker**, federal sentencing is vastly different.  Treating the Guidelines as advisory requires that the Court consider the guideline range calculation is merely one of many factors in determining a sentence *no greater than necessary to achieve the goals of sentencing* as set forth in 18 U.S.C. § 3553(a)(2).  See **Gall v. United States**, 128 S.Ct.586, 597 n.6 (2007); **Kimbrough v. United States**, 128 S.Ct. 558, 570 (2007).  The overriding principle and mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to achieve the four purposes of sentencing as set forth in §3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.  **Id**.

The "sufficient but not greater than necessary" requirement has been referred to as the "parsimony provision."  See **United States v. Denardi**, 892 F.2d 269, 276-77 (3rd Cir. 1989).  This

Circuit has found that the parsimony provision serves as "the guidepost for sentencing decisions post-Booker" and sets an independent limit on the sentence a court may impose. **United States v. Ferguson**, 456 F.3d 660, 667 (6th Cir. 2006), see also **United States v. Cull**, 446 F.Supp.2d 961, 963 (E.D. Wis. 2006).  Since §3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, imposition of a sentence greater than necessary to meet those purposes is reversible, even if within the applicable guideline range.  **Id**.

**E.     The Guidelines and Other Factors Courts Must Consider in Determining a Punishment that Fulfills the Sentencing Mandate under §3553(a)(2)**

In determining the sentence minimally sufficient to comply with the §3553(a)(2) purposes of sentencing, the court must consider several factors listed in §3553(a).  Those factors include:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed -

  (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B)   to afford adequate deterrence to criminal conduct;
  (C)   to protect the public from further crimes of the defendant; and
  (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the advisory guideline range;

(5)   any pertinent policy statements issued by the Sentencing Commission;

8

    (6)    the need to avoid unwarranted sentence disparities; and

    (7)    the need to provide restitution to any victims of the offense.

See, 18 U.S.C. §3553(a) (2007). See generally **Rita v. United States**, 127 S.Ct. 2456, 2463-65 (2007); **Kimbrough v. United States**, 128 S.Ct. 558 (2007); **Gall v. United States**, 128 S.Ct. 586 (2007); **Spears v. United States**, 129 S.Ct. 840 (2009).

While district courts must in all cases "consider" the guideline range, **Booker**, 543 U.S. 220, 245-46, the Guidelines do not subordinate the other factors in §3553(a). As this Circuit has pointed out, the sentencing mandate under §3553(a) serves as "the guidepost for sentencing decisions post-Booker" **Ferguson**, 456 F.3d at 667, and the Guidelines carry no more weight than any other factor under §3553(a). Importantly, a sentencing court may not presume that a sentence within the guideline range is reasonable. **Rita**, 127 S.Ct at 2463-65.

In a post-Booker world federal district judges have significant discretion to impose sentences below (or above) those called for under the Sentencing Guidelines. See **Spears v. Untied States**, 129 S.Ct. 840 (2009); **Kimbrough v. United States**, 128 S.Ct. 558, 570 (2007); **Gall v. United States**, 128 S.Ct. 586, 597 n.6 (2007). A non-guideline sentence may not be presumed to be unreasonable, and district courts need not impose sentences greater than they believe necessary out of fear of reversal. **Rita** at 2467. Instead, after determining the Guideline range, the sentencing court may decide that a sentence in that range:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "Heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.O, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f).

9

**Rita**, 127 S.Ct. At 2465.  District courts may even consider arguments that a particular guideline reflects "an unsound judgment" generally.  **Rita** at 2468; **Spears** at 843.  The appellate courts should not disturb the court's judgment if the sentencing judge provides reasons for the sentencing decision.  **Rita** at 2468.

**F.  Application of Sentencing Factors**

Applying the Sentencing factors in §3535(a)(2), this Court can fashion a sentence which will balance the need for incarceration relative to the seriousness of his conduct.  Josh did not impede or obstruct justice.  He was compliant with law enforcement and informed them of the existence and location of the firearm in the motor vehicle.  He was not combative, did not try to run and was truthful upon questioning.  He has accepted responsibility for his actions.  He has the support of his mother.  Josh understands that he will be going to prison on this charge, but has fashioned a plan for his time in prison and his life when he is released.  He plans on engaging in vocational training while incarcerated to obtain his Commercial Driver's License.

**G.  Conclusion**

Joshua's case presents precisely the type of factors that should be considered by the courts after **Booker**.  The succession of cases after **Booker**, including **Rita**, **Gall**, **Kimbrough**, and **Spears**, all demonstrate that this court has the authority and duty to consider the above-mentioned factors when arriving at a sentence that fulfills the sentencing mandate of §3553.

        Respectfully Submitted,

        /s/ Erik E. Jones
        ERIK E. JONES, ESQ. (#0075418)
        137 South Main Street, Suite 102
        The Delaware Building
        Phone  (234) 208-5020

        Facsimile (234) 205-2687
        erik@erikejoneslaw.com
        *Attorney for Defendant Joshua Carson*